on the argument calendar is Thomas & Betts Corp. v. Trinity Meyer Utility Structures. In this case, the parties agreed that Trinity would be responsible for resolving all customer express product warranty claims. Those product warranty claims were so important that the parties specifically defined them as the special identity matter and one of the liabilities that Trinity assumed as a basis of purchasing part of T&D's business. Your Honor, it is undisputed for purposes of this appeal that Trinity has breached its obligations with respect to resolving that matter, and as a result, T&D stepped in to mitigate the damages and settle with a very important customer. And it is now before the Court seeking to sue for breach and to make sure that Trinity pays its fair share, as agreed on the parties' agreement. The District Court took the expertise out of saying that that breach claim cannot be litigated, but because T&D did not strictly comply with the requirements of Section 6.3, even though the parties agreed that Section 6.3 would not govern the express product warranty claims. Your Honor, what I'd like to do this morning is focus on two points as to why the District Court should be reversed. First, explain why Section 6.3 does not apply. The District Court can only reach that agreement by – or reach that conclusion by rewriting the parties' agreement and eliminating a key provision that says that 6.3 does not govern express product warranty claims. And second, Your Honors, I'd like to address the sort of alternative argument that even if Section 6.3 did apply, it is not an essential condition precedent. That's when I think you may have anticipated some of the arguments on this issue in the earlier case, and explain why specifically this is not an essential condition precedent, and therefore substantial compliance is sufficient, and the case cannot be resolved in a motion to dismiss. Your Honors, let me start with my first point. I think it might be helpful to the Court just to explain very quickly how the contract is supposed to work. Section 1.1b of the contract says that Trinity has assumed liabilities. If you take a look at what those assumed liabilities are, they include one subpart of that, are expressed product warranty claims brought by customers. That, in turn, is defined in Schedule 11.1, which is on JA 502, as expressed product warranty claims. That's a special indemnity matter. Now, the agreement was set forth in Schedule 6.1a specifically how those claims would be resolved. And the agreement was that Trinity would use its best commercial efforts to resolve those claims. The party specifically agreed as to how much money each party would be responsible for. So once Trinity resolves the claims, it could come back to T&D for a limited amount of money. And then most importantly, and the point that really underlines the district court's decision, is if you take a look at the provision itself, this is on JA 466. It says very clearly, this Schedule 6.1a, rather than Section 6.3a, shall never express warranty claims. But you're skipping 6.2c, which deals with Trinity's indemnification obligations. That's the problem, right? Doesn't 6.2c address Trinity's indemnification obligations? Correct Your Honor.  Subject to the terms and conditions of Article 6, which would obviously include 6.3, the notice requirements. So why isn't 6.2, if you're suing for breach of contract on their indemnification obligations, we look at 6.2, right? You're absolutely right, Your Honor, and that's one of them, correct? So 6.2, and let me walk you through it, Your Honor, as to why. So the key that I would say, between our argument and their argument on this, is not a question of whether we can sue, but a question of what procedures we might follow to do that. Now 6.2, the key provision here, I'm sorry to make sure I have it in front of me here, the key provision here is 6.2c, and you might also take a look at 6.2b. And what 6.2c says is that Trinity is responsible for all assumed liabilities, subject to the buyer parties as our indemnification rights, I'm sorry, their indemnification rights under 6.1b. 6.1b refers back to the Special Indemnification Act, which cross-references Schedule 6.1a. So what the point there was is that they are responsible for all assumed liabilities, but with the case of the Special Indemnification Act in 6.1, in the Schedule, they have a right to come back to us for money. Now we are entitled, under both 6.2c and 6.2b, it's a breach that they did not take responsibility for those claims. Now the only question, Your Honor, is whether 6.3 procedures apply. And we have two parts of the contract that say those procedures do not apply. I just want to go back to subject to the terms and conditions of Article VI. What does that mean? Doesn't that mean their notice requirements, which are in Article VI, would apply to their indemnification obligations? I don't understand why you're skipping that. Well, Your Honor, so it is. It's all those things, but there's two things we know from 6.3. We know from 6.3a that it says the procedure for clarifying a claim except as provided in tax matters in 7.42 and in Schedule 6.1. So those procedures in 6.3 apply except for to the extent the procedures are supposed to apply in 6.1a. And 6.1a says these procedures govern, not 6.3. And you have a normal breach of contract. And that's a part of the Article VI that is referenced as what the indemnity obligations are subject to. Correct, Your Honor. It's either all in or a lot. And one of the things that's all in is the idea that the parties recognize that this particular claim happens. Well, one of the things that puzzles me is that indemnity is a somewhat slippery term, right, because on the one hand, the way you're suggesting this is supposed to work, and it makes a lot of sense to me whether or not it's what the contract actually provides is a different question, but what you're saying, the way this is supposed to work is that on the special indemnification matters, the warranty claims, the expectation is they settle those claims, and then they come after you for indemnity to the extent that you have to contribute to that under the terms of how it's going to be divvied up, right? And that provision in 6.2, I think it is, is sort of set up as the way they seek indemnification from you after they've settled the claims, not in terms of how you are supposed to go after them. And the problem here is that, well, you could say what they're doing is really indemnity in the way that an insurance company does. It's they pay the claim, and they also defend the claim, and they do all of that, and that's a certain kind of indemnification. But they didn't do that. And I take it they're saying that, well, then your remedy is to come after them for indemnity, and then it's just like when they're coming after you for indemnity. So, Your Honor, let me try to answer that in two ways. Yes. So I agree with everything you've said, I think. What I would say is that the agreement was just sort of a one-page agreement that said that they would pay for it, and then they could come after us. And there was a breach of that, and there were no procedures in the contract. We would just follow the normal contract rule, which is the fact that the parties' responsibilities split, and it's just a consequence of their breach. We would sue and enforce their contract. That's exactly where we are here, except, as you say, the parties' defiant indemnification is sort of a strong, weird way of doing everything. But that's why, Your Honor, you're absolutely correct. We get to sue under 6.2, which is to say we are going to enforce the fact that they're required to pay for the student liability. Now, their argument is, okay, that's okay, but you also have to be creative with the requirements of 6.3. You have to go through those procedures or overcome that hurdle. And our argument is no. The agreement is clear that 6.3 does not govern express market place. It says so both there. And, therefore, it has to be. It says so. It says that in 6.1. It says it in 6.3A and in Schedule 6.1A. And that's the key language that the district court basically wrote out. Let me ask you this. When ETT first surfaced with issues about defects in the products they had bought, your client took it on and negotiated with them, right? Yes, Your Honor. There's lots of complexity, but, yes, that's correct. But that procedure seems to me to be inconsistent with your description of how these contract provisions interact. In other words, you didn't tell them that, well, look, this is not our problem. This is your problem. You go chase it, figure it out as best you can, and you may or you may not have an indemnity claim against us. You took it on. Let me clarify that for you. Go ahead. It's important to recognize that there were some warranty claims that are excluded that happened before. And then after the sale, there were these new warranty claims that came up, which are the subject of this. And that's why the parties specifically negotiated. Your Honor, at the start, T&D and Trinity together were working on this, resolving the issues. And we were working together to try to resolve it. And then at some point, they said that's it. We're not involved anymore. But at the time the parties negotiated the agreement, it was understood. Judge Parker, I think your question is right on, but it goes directly to a question of the merits, not something that you resolve on a motion to dispense. I think that that doesn't go with the question of whether you have to jump through the 6.3 hurdle. Can I go back to the beginning of Judge Parker's question? When ETT raised these issues, am I right that it raised them to both you and Trinity? I believe so, yes, Your Honor, because they were the new owners, right? So we sort of know that they now run the business. Now, of course, as you see in our complaint, we mentioned this. The manager, one of the managers at T&D, goes over to Trinity, which is why we know they have actual notices. Because we were all working together. But did ETT file a lawsuit, or was this just all negotiations prior to litigation or outside of litigation? It was negotiated because it's an important client. You can see that under 6.5, we have an obligation to mitigate our damages. For our client, it was important that we just not let this go to litigation. Okay, so there's nothing like a complaint in which we could say they had notice of this because ETT served both sides with this complaint or anything like that. That's correct, Your Honor. Now, on the notice point, I would just say that we've alleged enough that they had actual notice, and we would say that that could be on the merits issue. It could be debated, but that was all non-emotional expense. Under your reading of the APA, then, there is no—I'm confused, I guess, as to what the notice requirements would be then, that your client could settle a lawsuit, for example, without getting their consent, without giving them notice and giving their consent? What are you arguing would apply if 6.3 would not apply? So, Your Honor, what I'm saying is two things, is that 6.18 does have specific procedures in Paragraph 4 that talks about how the parties are going to go back and forth. But my point is two things. One is that to the extent they're making an argument that we didn't mitigate properly or we should have given them additional opportunities, that goes to the question of damages and mitigation. It doesn't go to the question of whether 6.3 applies. And, Your Honor, I am arguing that really there are no notice procedures that apply. I was trying to—why? Because the parties directly negotiated it. I mean, they set forth an entire schedule that said, they're going to take care of this, this is how we're going to divide it, and we're going to limit the damages that seem to be impossible for them. There's nothing unusual about that. And although the contract itself is sort of unusual in its indemnity, if you just think about this as a normal breach case, you would sue for that. And the fact that the parties ruled or reversed would not prevent you from enforcing the law. Well, I thought that you were arguing in the briefs that—correct me if I'm mistaken— I thought you were saying that they did have notice, that you alleged that they did have notice, and indeed that at least the way I read your brief, and maybe I'm mistaken, you were saying that the two, both you and Trinity, were working together on this claim at some point. So they obviously had notice of it. This is the allegation. It may or may not prove true, but that's what the complaint says, and we take it as true, I think. That you were working together, and then they sort of went away. And that left you to deal with the claim as best you could. Is that what the complaint alleges? Yes. And again, that may or may not prove to be true, but that's what we're taking as true for now. And so it's not clear—I don't know that you're taking on the burden of saying there were no notice requirements, but only that there is some requirement of reasonable notice, that we'd have a different case, perhaps, if you had gone to ETT and said, let's just work this out, gave them a ton of money, and then came after Trinity without their ever having had any opportunity to play a part in the resolution of the claim. You're not saying that that would be okay to do. That's what you're—to be more specific, not to agree too much, but I agree exactly how you framed it. All I would say is to the extent there's a question about, did we pay too much? Would they have liked something different? Was this reasonable? Those are a different kind of issue. But what you're saying is because of the way the contract is structured, the very specific indemnity requirements that were set up to apply to Trinity, A, don't really apply to you, and B, at least in this context, they should not be construed as a condition precedent that has to be strictly enforced, but so long as you substantially complied, that you substantially were working in a situation where they had notice of this, you're still entitled to bring the suit. I think that—is that a correct restatement of your argument? Correct, Your Honor. And on that second point, all I would say is it goes back to your question about all-in or all-out, which is we know that 6.3 says that delay in providing notice does not mean that you're off the hook for liability. Now, their response to that is to say, well, delay is different from actual notice, but it's still all-in or all-out, which is it's clear that the parties do not intend this provision to be strict compliance. But it also says no party shall agree to any settlement of such action suit proceeding without the prior written consent of the other party. So it's not just notice. If it is a condition precedent and the strict compliance is necessary, certainly that's a problem, right? No, Your Honor. With respect to the sentence that we're asking whether it's substantial compliance or strict compliance, if they're right that subject to all of Article VI, if that means that it's a strict condition precedent, then everything has to be a strict condition precedent, which is completely inconsistent with the idea that delay is a strict condition. So they have no way to read subject to to mean that everything is strict. And, Your Honor, I would say if you look at the contract, the only language they rely on is subject to. But the parties use subject to 70 times in the contract at least to refer to the cost reference. The first time they use it is in the introduction when they say Trinity takes assumed liability subject to all the terms and conditions of this contract. Now, if that is a condition, a strict condition precedent, then every term and condition would make no sense. I know, but Article V, which is labeled conditions precedent to closing, uses that same term, subject to, subject to, right? But it's also labeled. It's labeled conditions precedent. And other language in that section makes very clear what the waivers are and frustration and everything like that. They made clear that they intended that. But I'm saying, Your Honor, Judge DeLongo, Judge Bianco, I apologize. That's OK. It's not subject to is not the magic words they want it to be, and it's not the magic words anywhere in the provision. They're trying to read a whole lot into those two words that's just as inconsistent with parties. And Judge Lynch, you summarized the argument perfectly, which is I think this type of case does not and should not be resolved by the motion that's next. All right. Thank you. Thank you. May it please the Court. Judge Engelmeyer correctly dismissed the amended complaint because T&B indisputably failed to comply with procedures that are a condition precedent for indemnification. Before I get to my main point, I must take vigorous issue with something I believe I heard my friend say, and that is Davis undisputed that Meyer breached. That is not the undisputed in the lease. We vigorously dispute any liability. We said so in 2016 when we promptly responded to the 2016 letter from T&B. We said it again in our motion to dismiss at JA 510, and we said it again in our brief on appeal at page 44. So I just want to make clear, we very much dispute liability for the underlying indemnity here. This Court should decline T&B's invitation to, in its own words, excuse its failings because T&B's hail Mary arguments are all contrary to law, inconsistent with the pleaded facts, waived or all free. There is simply no legitimate reading of the contract, the law, or the amended complaint that allows T&B to put Meyer on the hook for a $130 million claim that T&B unilaterally settled without Meyer's written consent and without bothering to notify Meyer of the magnitude of its exposure until nearly two years after the secret settlement. The judgment should be adjourned. First, the contract lays out precisely the procedures. T&B shall follow in seeking indemnity for a third-party claim, and it makes any duty to indemnify conditioned on or subject to following those procedures. T&B has never, as Judge Engelmeyer pointed out, has never argued, never even argued that it complied with all of these requirements. Second, as Judge Engelmeyer explained, New York's law is clear that these requirements all had to be literally performed, substantial compliance isn't enough. And this rule, to be honest, is especially important in the indemnity context, where responsibility is often conditioned on detailed notice requirements essential to ensuring that the party on the hook has a meaningful opportunity to decide how to handle the claim and otherwise to protect its own interests. Third, even if substantial compliance were the standard, and it's not, T&B doesn't and can't come close to satisfying it. T&B's decision to wait nearly four years after ETT asserted its claim. And you're right, eight months went by before even the 2016 letter was sent from T&B to Meyer about the fact, not just about the fact of the claim, that's not enough, but about the fact that they intended to seek to put us on the hook for that claim. It waited two years after it unilaterally settled that claim to reveal the extent and magnitude of the damages exposed. So we think that unquestionably shows prejudice. There's prejudice shown on the face of this complaint just by that chronology. And this was an ongoing claim of your adversary? That is correct. ETT and T&B, all of the agreements in question are between ETT and T&B. Meyer is not a party to any of those agreements. I know there are some straight references in the pleadings below to Meyer's customer, but that is not the case. This work has always been T&B's. T&B's principal argument, as we've heard today, is that the contract didn't require it to submit a claim notice at all. But that's simply wrong. And there's a couple of reasons for that. I don't think there's any real meaningful argument, one way or another, that if the provision of the contract that refers to subject to applies, that language of condition present, numerous cases have said it. They have no case in the indemnity context, no case in the indemnity context even suggesting otherwise. So that's why they sort of dodge and leave, and now want to say that what we're dealing with is a special indemnification matter. Multiple problems with that theory, but first thing, that's not what their own complaint pleads. It is a bare-bones complaint, and it doesn't take long to look through it. You will find no mention of special indemnification matter in the complaint. What you will find is assumed liabilities. And, Judge DiGioco, in response to your question, my friend and the other said, so I said, you're right, we look at 6.2 of the contract. 6.2 is about Meyers' obligations. A special indemnification matter is specifically listed in Section 6.1 that refers to TMB's indemnity obligations. So the contract, the complaint makes clear that what my friend and the other side is seeking is indemnity under 6.2 assumed liabilities. And that means that they have to follow the numerous procedures that our obligation to indemnify is conditioned on. And I think a contrary ruling would risk making that common contract language a dead letter by offending settled expectations of untold parties to contracts governed by New York law. And so as we've heard today, to get around that language, and to get around the fact that it has, it's conspicuous that they haven't complied with it, they want to focus on 6.1A at the back of the agreement. But again, the plain language of 6.A makes clear that it's about TMB's duty to indemnify Meyer, not the other way around, as Judge Inglemeyer correctly recommended. And I believe that I heard my friend on the other side try to make a distinction in terms of defining special indemnification matters as referring to express warranty claims. The problem for my friend is that the contract itself defines an assumed liability. This is at JA 433. This is Article 11, Schedule 11, on definitions. It defines assumed liabilities by using the language for any claim for breach of an express product warranty made in respect of any product or good manufactured or sold by a seller before the posting date. That is why the complaint here refers to assumed liabilities time and time again. That is what they are seeking indemnification for, and as a consequence, they are required to follow the notice procedures that the plain contract language makes subject to following conditions present that they indisputably, concededly have not followed. Can I just go into that Fairbanks complaint? In Paragraph 16, it's alleged that ETT directly advised Trinity of ETT's warranty claims when those claims were first asserted. We have to take that as true, right? Yes, Martha. That allegation is interesting for what it does not allege. It doesn't allege that ETT—let me look up. We're here because T&D is seeking indemnification from us based on assumed liabilities. They have an obligation to let us know, not just of the fact that this is a claim. The claim notice is the way that they deliver notice to us that they plan to seek indemnity from us. So mere knowledge. I think Erickson is directly on point on this drama. In Erickson, another indemnity case, there was knowledge of the allegation. Are you suggesting that we should read this allegation in the complaint as not fairly read to say that ETT told Trinity what it was asking for when it asserted its claims? Is that the point, that you didn't know how much was involved? T&D admits that we did not know how much was involved, the extent of it, until they filed their—they sent us the letter in 2019. Okay. So that's not—you're saying that's not disputed? That you did not know—Trinity did not know? The magnitude of the exposure is a hundred and thirty million until 2019, two years after. And can you take me through the definition of special indemnification matters and explain why that does not cover this kind of claim for breach of express warranty? Yes. I'm happy to do that, Your Honor. Before I do that, I just want to make clear that regardless of whether what we're dealing with here is a special indemnification matter, the only indemnity right that T&D has under this contract is Section 2, referring to assumed liabilities. That's why it pled its complaint the way that it did in reference to assumed liabilities and never once refers to a special indemnification matter. That is an indemnification right. So— Well, I'm just trying to—you know, there are a lot of different interlocking provisions in this contract. And at least as I read, and I am certainly not suggesting I read it right because there are a lot of things, a lot of moving parts, but it was not clear to me that there was some sort of distinction between special indemnification matters and assumed liabilities, only that one of the assumed liabilities is claims based on express warranties. And then special indemnification matters is a category that sets up, one could argue, at least they do argue, that sets up different types of procedures and different types of arrangements that will decide because it seems to me that while there is—you know, the assumed liability includes these warranty matters, it isn't the case, as I read the contract, that you're on the hook for the entirety of any warranty claim. That probably wouldn't make any sense. But there's a whole procedure for divvying up who gets the responsibility because you assume the liability, but then you get to come after them, and then there's a procedure for deciding who's actually going to be responsible for what. Is that all wrong? Am I totally misreading the way this contract is set up? Here's how I'll respond to that. I'll just try to sort of boil it down in a simple way. T&B, in its complaint, has brought a kind of breach of contract seeking indemnification based on the assumed liability provision. That's 6.2. Again, special indemnification matter, that is in service. Whether—excuse me, whether—I'm not asking—excuse me, please. I'm not asking about when they used the words special indemnification matter. I'm telling you that as I read this, and again, I'm not saying I'm right. I'm just saying—I'm trying to get your response to it. I thought it was reasonably clear that special indemnification matters were a subset of assumed liabilities that would be adjusted in particular ways. And if that's so, then I'm not sure why they have to say special indemnification matter. They're talking about an assumed liability, and the type of assumed liability is going to be one that's subject to that. Now, I could be entirely wrong, and that's why I ask you to take me through the definition of special indemnification matters and explain to me why the claim here does not fall under that rubric. Or are you saying perhaps that it does fall within that rubric, but that doesn't matter? No. You're saying it does not fall within that rubric. So that's why I'd like you—I'd like you to take me through the language and explain why that's so. Yes, Your Honor. First, I have to take issue with your suggestion that under the contract, a special indemnification matter is a subset. You can do that later, please. First, take me through the language. If you're saying it's—excuse me. If you're saying this is not a special indemnification matter, then the whole question becomes irrelevant, whether it's a subset of assumed liability or not. It's just—it isn't that, period, end of story. So that's what I'd like to hear first, and then maybe we can talk about the other issue. Certainly, Your Honor. Okay. And can you just—I'm sorry. If you tell me the page—tell me the page where I'm supposed to look at in the appendix. I'm looking at JA 426. It's Article 11, Schedule 11.1 of the contract. Got it. Okay. A special indemnification matter has the means that work in Schedule 11.1, which means— All right, so now we have to go to 11.1. Okay. I'm sorry. I've lost you again because I'm now—I was now looking for 11.1, and what page is that? Yeah, that's JA 426. No, that just tells you to look at Schedule 11.1, and 11.1 is very— Yeah, 502. 502, thank you. Okay, got it. Right, here it is. It means any breach of an express product warranty made in respect of anything manufactured by a seller prior to the closing date. Now, why isn't that exactly what ETT is claiming? Because the contract puts special indemnification matters in the bucket along with excluded liabilities that are T&B's obligations. So the indemnity provision for seeking indemnity under a special indemnification matter— again and again refers to the buyer that admires responsibilities to seek indemnity from T&B. So that's the dissonance here, is that they are trying to use a procedure, a procedure for seeking an indemnity that belongs to the buyer. It is their responsibility. It is the buyer. It is us that will seek indemnity for them, and I think that is the dissonance. What we have here is an attempt by T&B, as it's claimed, to seek indemnification under 6.2 for assumed liabilities. And to do that, as Judge Engelmark correctly held, they needed to follow the procedures that were subject to and they indisputably did not. So in our question, the big difference that you made in terms of special indemnification matters— and that's why we say it really doesn't matter, because assumed liabilities use the same logic. It's about who is seeking indemnity. If it's T&B seeking indemnity, they seek indemnity for assumed liability under their own indemnification right in the contract. And to do that, they use the procedures set out subject to the claimant. And remind me why this is an assumed liability. I'm sorry. Remind me of the concept of assumed liability. Yes. The concept of assumed liabilities also includes the idea that it's fit to any express warranty claim. That arises in respect to any product or goods sold by an acquirer prior to the person. Yeah, but see, that's why—isn't that precisely the definition of special indemnification matter? The difference, Your Honor, is in who is in the indemnity right. I'm not—no, no, no. Let me—I know it's very confusing. Let me try and help you show why I'm confused, and then you can explain. I was suggesting that a special indemnification matter is a subset of the assumed liabilities. And you just said, I thought, that an assumed—one of the assumed liabilities is breach of an express warranty for something that was sold before the closing. Now, this—and that's precisely what the definition of a special indemnification matter is. That's why I thought special indemnification matters are a particular subset of assumed liabilities. Now, I understand your point that there are different procedures depending on who's seeking indemnification from whom. I get that. But I'm starting with step one. You told me special indemnification matters are something utterly different from assumed liabilities, and they're not the same thing. But I'm saying that a special—one of the assumed liabilities you just told me is liability for breach of express warranties. Now, again, when I first read all this, this seemed very counterintuitive. If before the sale—the sale to you—T&B made someone an express warranty, and then it turns out that the product didn't live up to that, logically I would think they're the ones who should pay for that. On the other hand, it seemed to me—and again, I'm just trying to make some commercial sense out of this contract—the idea was you're now the people who are running this business, and it's going to be your customers who are making these claims, and they would come to you because you are now the inheritor of the Meyer Company, who is who they dealt with all along. So they would naturally come to you, you would resolve it, and then you would seek indemnification from them, and there would be a process and a substantive division of who's going to be liable for what, which is laid out in the contract. And I've always understood their claim to be that when ETT came to you and them with a claim, the way the contract worked, you were supposed to deal with it and then come after T&B for whatever they owed you after you dealt with it. And they're claiming that you didn't do that. That seems like—it may be all false. Lots of lawsuits are based on things that turn out not to be true, and you contest it, and you say it's not your—et cetera, et cetera. and you didn't take the lead, that to come after them and say they—when they stepped into the breach as they put it, as they allege, whether it's true or not, as they allege happened, New York law is not that favorable to interpreting things as conditions precedent that have to be strictly complied with. And they have some equity here. That's what I thought they were arguing. And you're telling me, what do I got wrong? Other than everything. Yeah, where do you start? There's no dispute that for eight months, eight months, Meijer tried to handle that. If in this view— Meijer is you. No, I'm sorry. T&B tried to. Thank you. Okay. T&B tried to handle it. T&B has never made, even on its own allegations, like this is anything other than its responsibility. But you see, that's a—excuse me, excuse me, excuse me. That's a factual argument. No, Your Honor, I think you're— They say, they say initially T&B and Trinity worked together to—that's what they allege. I mean, that may be false. Either they, the facts aren't going to prove that out. But that's what they say. They don't say initially we plunged right in and settled this claim. They say E.T. and T. directly advised Trinity of the claims, and initially T&B and Trinity worked together. Then Trinity ultimately—this is paragraphs 20 and 21. 20 is they worked together. 21 is Trinity ultimately wrongfully denied any responsibility for the claims, refused to take responsibility for the defense of the warranty claims, and refused to use commercially reasonable efforts to resolve E.T. and T.'s warranty claims. That's what they say in the complaint, is the chronology. As a result, T&B was forced to handle the defense. That's what they say. True, false, indifferent. We have to take that as true. And so this is why I'm having some trouble, because it seems to me, at least, that the contract is at least susceptible to the reading that this was your assumed liability, and that it was a special—the particular category of assumed liability is it was a special indemnification matter, because it's about this express warranty. And if I may step in right there, the answer to that question is section 6.1, section 6.2, and section 6.3. Section 6.1 is very clear. So they're the ones who are supposed to be on the hook in the first place under 6.1, is what you're saying? Yes. Ms. Parrish, let me see if I can crystallize what you're trying to say. The special indemnification matters relate to 6.1a, which deal with their indemnification obligation, not yours. So to the extent that there may be overlapping definitions with assumed liabilities, you're just saying it doesn't—that schedule does not apply because it's in reference to their obligations. That's correct. That's correct. And 6.2— So it's not that the definitions aren't similar or overlapping. It's simply by virtue of the contract itself, that deals with their obligations. And you're saying that's why it doesn't apply. Yes. That's correct. And so when my friend agreed that 6.2, to your question, 6.2 is what governs, that sets out buyer's obligation, buyer's obligation to indemnify for assumed liabilities. Let me just ask you one question about subject to. I think I heard Mr. Parrish say there are other parts of the APA where that is not a condition precedent. What's your response to that? That term is not always used in the APA as a condition precedent. What's your answer to that? My answer to that is that I'm not here to say that every time subject to is used in the contract, it reflects a condition precedent. We don't disagree with my friend that context matters. But in the context of indemnity and the indemnity provisions, which is what we're here about, and in fact, it's absolutely condition precedent, just as Judge Lamont said. And I think they're pointing to Article 5, and they say subject to is used here. These are condition precedent. They ignore 12C as a contract, which means for the headings and provided only for the 14 minutes. Does that answer your question? Yes. All right. Thank you. Thank you. Your Honor, I'd like to make three points. First one, very brief, and then I'll get to the meat of it. And I'll just say a few things on subject to. Much of the argument focused on whether there's prejudice, the amount of notice, the delay. But to Lynch, you're right. Those are all summary judgment arguments. They're not all in here. The key question, which as you saw right now, is a question about the 6.3 clauses. Now, counsel respectfully pivoted to this idea that this is not a special indemnification matter at all. To the extent she suggested that, that's not in her brief. And all we have to do is look at Schedule 6.1a to see that that is wrong. Then she fell back on what I think is her argument in her brief, which is somehow if you read 6.1 and 6.2, the special indemnification matter refers to power applications. And Judge Lamont, but that's your question, and let me explain to you why she's wrong about that. It does say in 6.1 that it's our obligation to identify them under the Special Indemnification Act. But Judge Lynch, you completely understand what our claim is. Go to 6.1a, which is on page 466. The reason why 6.1a says we have that indemnity obligation is because it sets forth a cost allocation formula in paragraph 2 that says that after they've settled the claim and resolved it, they can come back to us for amounts of money. If it's under a million, they get nothing. If it's between a million and 25, it's under a million, they get a percentage. If it's above 50, we don't pay anything else. That's what it's referring to. Then what you do is you take a look at 6.2, which is our indemnification rights. It says they're responsible for all assumed liabilities. This is in Part C. Subject to their indemnification rights under 6.1b, which is a reference back to the Special Indemnification Act. Why isn't the procedure, if you are seeking indemnification from them, that 6.2c applies, including subject to all the conditions, including the notice provision, and then if they, under this procedure, turn around and seek some recruitment under 6.1, that's only the point at which the special indemnification matter would kick in under 6.8. Why isn't that the way it works? You're on look at 6.1a. I'm looking at it on page 463. In respect to the Special Indemnification Act. Whenever you refer to a paragraph, could you tell me the page of the appendix that I should be looking at? Yes, Your Honor. On page 466. That's Schedule 6.1a, as opposed to Section 6.1 Parens A. You understand the problem. I do. If you look at Schedule 6.1a on J466, I'm asking you to look at, very quickly, paragraph 2. That's the cost allocation formula. And then, Judge Bianco, paragraph 3. I want you to look at two sentences in that paragraph. The first sentence. The first sentence. The first sentence that says, in respect to the special indemnification matter, FIRE, Trinity, shall use commercially reasonable efforts to resolve all claims for breach of an express product warranty in a commercially reasonable manner. That puts the burden on them. And then you're going to look at the last sentence. The last sentence. Yes, Your Honor. This Schedule 6.1a, rather than Schedule 6.3a, shall govern with respect to this matter. Your Honor, go back now to JA 410. This is 6.2. These are our indemnification rights. We say they're responsible for any assumed liability subject to the indemnification rights under the Schedule 6.1a, which we just talked about. And then you look at 6.3. You say, do we have to jump through the extra referrals that 6.3 requires? And the first sentence of 6.3 says, except as provided in Schedule 6.1a, all claims for indemnification made under this agreement are subject to these requirements. You go back to 6.1a. I'll read it one more time. But 6.1, Section 1 makes it clear that this is referring to your client's indemnification obligations with respect to, right? The whole schedule relates to your client's indemnification. After they've settled it, Your Honor. What we've done is we've agreed in Schedule 6.1a, they will pay for it. They will settle it. Then they can come back to us and get money. But you see, Mr. Powers, the problem here is that indemnification is used in different ways. And Section 6.1 talks about indemnification by the seller, that's you, and says you shall defend the buyer against all these problems, including special indemnification matters, which seems to undercut the idea that you're advancing, which I agree is what it sounds like in Schedule 6.1A. That tends to suggest that you're the one that's going to defend them from the beginning against claims that are special indemnification matters. And that's your indemnification obligation. Well, not the schedule, but 6.1d makes the point that we are responsible to them to the extent set forth in Schedule 6.1a, which explains what the indemnification matter is. Your Honor, let me just step back, because I think this is not as complicated as they want to make it. There are two parties that have an agreement. We know there's these claims out there. We know what they are. We specifically negotiate. We set it that they have the right or they are required to sell them in a commercially reasonable amount. And once they do that, they can come back to us for a limited amount of damages. And you can see in 6.5a.4, it says that we are responsible for no more than the damages set forth in Schedule 6.1a. Now, they have reached that agreement. We litigate it as we're required to under 6.5. Then the question is, is there anything preventing us from just exercising the rights under 6.2 and under general contract principles that would say there's been a breach? We're going to hold them to the responsibility and certainly hold them to the cost allegations that they agreed to in Schedule 6.1a. And the other thing that I guess you're relying heavily on is that Section 6.3 is the section that deals with procedures, right? And its very first provision is except as provided in something that's not relevant to us and in except as provided in Schedule 6.1a. Yes. Everything has to go according to the following procedures. So we know 6.3 cannot apply. And so the district court has to be wrong on that. So you have to go back to Schedule 6.1a. And there, there is what procedure set forth? No procedures for us. It's just a breach. So you're saying there is nothing in Schedule 6.1A that sets forth a different procedure with other conditions proceeding. We know that 6.3 doesn't apply. All that applies is Schedule 6.1a. And there we would just follow normal contract law. And there might be conditions under which you would be doing very bad things that someone would have to hold you accountable for. But here you gave what you contend is reasonable notice. What they contend is not reasonable notice. And that's a subject that's a factual dispute. Exactly, Your Honor. And let me just say two things so you don't think I've misled you. And just be clear. The one thing we're saying is that we know in Schedule 6.1a, the one thing the party did agree on is how the cost would be allocated. There is no reason that having breached, we should be able to say, you agreed to pay this percentage, we pay this percentage. So we're trying to force that. And the second thing, Your Honor. And then at that point, there's room for a fight. And it can be a big fight. It can be a fight about whether, and mostly it's a fight, I suppose, about whether you went in the tank on this settlement and are subjecting them to unreasonable liability would be one kind of argument. And therefore, it's not covered. Or whether whatever the terms of Section 2 of Schedule 6.1a are, I haven't tried to parse them out. Maybe there's some argument that you're asking for more than that actually entitles you to. And that's all the merits. Exactly, Your Honor. And the only thing I want to say to make sure that the court doesn't feel like I'm misleading anyone. There are procedures that apply in paragraph 4. It's just they don't apply to us. They're talking about what happened with them. The district court made this point that just because they breached and therefore Schedule 6.8, they would do all this. Therefore, the district court had nothing to do but pass around percentage. But under your analysis, the notice provision is essentially a dead letter. It doesn't do any work. For the purposes of the special indemnification matter that the parties specifically negotiated knew about. So it's a special case to say here's how we're going to do it. But it's never going to. I had the same thought Judge Parker. It's never going to apply. 6.3 is never going to apply under your reading of the statute. As soon as they turn around and try to recoup some portion of the liability, you're saying that 6.3 is gone, right? It never applies to extra warning claims. You assume liabilities of lots of different things. 6.3 applies to all of them. So if there's a tort claim, 6.3 applies. If there's different types of, you know, employment claims, 6.3 applies. All we're saying is that the parties said, look, there's three types of claims. There's the work that we didn't negotiate. That's 6.3. Give us notice. If you get a claim. There's the stuff that we all know about. As a legend of the complaint, we're dealing with it together. We've re-instituted 6.1a. They're going to take care of it, and then they'll come back to us for money. And they agree. And so your position is, in that circumstance, is the latter one that you adverted to, the notice provision does no work. Right. Because the parties agreed that the 6.3 would not apply. It does not matter. You cannot reach apply 6.3 without writing out of the agreement the last sentence we read together in Paragraph 3 of Schedule 6.1a. You never heard anything in her brief or in opposing counsel's argument today that explains what you do with that sentence that says Schedule 6.1a shall govern not 6.3. And, Your Honor, I'm just going to say one thing about your question, which would be helpful on the subject. I would just note that she didn't answer your question because there is no answer. It is used throughout the contract to refer to cross-referencing not credited to the President. And she has no answer to the late point in it, which shows that the parties did not intend this provision. Judge Williams, I am with a point. Your Honor, all in or all out, you can't pick and choose which one is correct. And I would just say, Your Honor, that as you said, this is a rather tough, tough result. We have negotiated specifically that they be responsible. They've reached. We've just asked for a chance to prove our claim on the matter. All right. Thank you very much to both of you. The argument was very helpful. Thank you. Have a good day.